593 A.2d 10

**Douglas J. THESING, Appellant,**

v.

**ZONING HEARING BOARD OF YORK TOWNSHIP and York Township Board of Supervisors, Appellee.**

Commonwealth Court of Pennsylvania.

Argued April 5, 1991.

Decided June 6, 1991.

Gerald E. Ruth, York, for appellant.

Raymond L. Hovis, York, for appellee.

Before DOYLE and COLINS, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Douglas J. Thesing (Thesing) appeals an order of the York County Common Pleas Court (common pleas court) which affirmed the decision of the Zoning Hearing Board of York Township (board), an appellee herein, denying Thesing's application for a certificate of use.[1] We will likewise affirm.

Thesing applied for a certificate of use from the township's zoning officer for a custom decoration and upholstery shop which he had evidently already begun operating on property straddling two township zoning districts, C–S Shopping Commercial and RM–5 Medium Density Residential, which property had been previously used, by grant of special exception, to house one personal storage building and one office building with garages and was formerly

1. Section 601 of the township's zoning ordinance requires use certificates for any change of use of a structure or land and states that such changes of use must be certified by the township's zoning officer as being in compliance with the zoning ordinance.

occupied by a tenant who prepared sandwiches for retail sale. The zoning officer denied Thesing's application.

Thesing thereafter appealed this denial to the board. After hearing, the board denied Thesing's appeal. Thesing then appealed to the common pleas court.

In the interim, notes of the board's hearing were lost. As a result, by agreement of the parties, the board held a second hearing and again denied Thesing's application. Because Thesing's property was split between the C–S and RM–5 zones, the board looked to the various uses permitted in a C–S zone to determine whether Thesing's requested use was permitted and concluded that it did not fall within the two relevant uses allowed in a C–S zone, but was more akin to a light manufacturing use not permitted in a C–S zone.

On appeal, the common pleas court, without taking additional evidence, affirmed the board's denial of Thesing's application. Thesing now seeks our review,[2] raising the following issues:

1) Whether the board and common pleas court erred by not granting Thesing's requested custom decoration and upholstery shop use in a commercial shopping zone where there were permitted uses of retail stores and personal service shops (except those involving significant processing or repair) and small-type processing establishments with 2,000 or less gross square footage.

2) Whether the board and common pleas court erred in holding Thesing's requested use involved significant repair without actually having any evidence or findings of fact as to what factors the board took into consideration about Thesing's use that supported a finding of significant processing or repair.

3) Whether the board and common pleas court erred by not applying the appellate cases that hold the broadest

---

**2.** Our scope of review in a zoning appeal where, as here, the trial court took no additional evidence, is, of course, limited to determining whether the board committed an error of law or abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

and widest use is permitted when terms are undefined and failing to apply the plain ordinary meaning of processing to include the fact that an upholstery shop/establishment is where a restoration/repairing process occurs and that such is not significant when only one-third of the property is used in said work.

As to the first issue, the board found that Thesing's use did not fall within either of the two relevant uses allowed in a C–S zone: (1) retail stores and personal service shops (except those that involve significant processing or repair) or (2) small-type processing establishments with gross ground floor area of 2,000 square feet. Section 200 of the zoning ordinance, use nos. 46 and 53, respectively.[3] More specifically, the board found that Thesing's requested use involved significant processing or repair and that it was not a small-type processing establishment, which, according to the board, embraced only photographic processing, reproduction processing, or the like. The board further found that Thesing's use was akin to a light manufacturing use, which use includes lace manufacturing and sewing apparel and is not permitted in the C–S zone. Section 200 of the zoning ordinance, use no. 81.

Thesing points out that only one-third of his property was used for repair and that the record does not support the board's finding of significant repair. He further argues

3. Use no. 46 excludes not only retail stores and personal service shops which involve significant processing and repair, but also commercial greenhouses, shopping centers, eating establishments and indoor recreational establishments. We disagree with Thesing's characterization that the exclusion of these latter four operations outlines the scope of the "significant processing or repair" exclusion. Rather, from our understanding of this use provision, five types of operations are excluded: retail stores and personal service shops involving significant processing or repair plus the latter four operations previously listed.

As to use no. 53, we note that coin-operated laundry and dry cleaning establishments are specifically excluded. This exclusion leads us to believe that such establishments would otherwise constitute small-type processing establishments, provided they had a gross ground floor area of 2,000 square feet.

that an upholstery shop is an establishment where a restoration/repairing process occurs.

As noted by Thesing, the terms "significant" and "processing" are not defined in the zoning ordinance. Judge Blatt, speaking on behalf of this Court, stated in *Appeal of Mt. Laurel Racing Association*, 73 Pa.Commonwealth Ct. 531, 534–35, 458 A.2d 1043, 1044–45 (1983) that "[i]n interpreting provisions of a zoning ordinance, undefined terms must be given their plain, ordinary meaning ... and any doubt should be resolved in favor of the landowner." (Citations omitted.)

Keeping in mind the context in which it is used here, the term "significant," in our opinion, is clearly synonymous with the term "substantial,"[4] which has been defined as:

—an adjective meaning something worth while as distinguished from something without value or merely nominal. *Bush v. Keystone Carbon Co.*, 211 Pa. Superior Ct. 422, 424, 236 A.2d 231, 232 (1967).

—considerable; ample; large.... Webster's New World Dictionary of the American Language 1454 (College ed. 1962).

—[o]f real worth and importance ... [s]omething worthwhile as distinguished from something without value or merely nominal.... [s]ynonymous with material. Black's Law Dictionary 1280 (5th ed.1979).

Evidence of record indicates that one-third of Thesing's property is presently devoted to reupholstery work which often continues seven days a week and frequently extends into late evening hours. N.T., pp. 22, 34–35, 44–45. Such evidence, in our judgment, is sufficient to support the board's determination that Thesing's requested use involved "significant" repair.[5]

4. *See, e.g.,* Roget's International Thesaurus 437 (3d ed.1962).

5. We note in passing that reupholstery work falls within the common definition of "repair": "to put back in good condition after damage, decay, etc.; mend; fix.... to renew; restore; revive ..." Webster's New World Dictionary of the American Language 1233 (College ed.

"Process," in turn, is commonly defined as:

> a continuing development involving many changes: as, the *process* of digestion.... a particular method of doing something, generally involving a number of steps or operations.... in *printing,* photomechanical or photoengraving methods collectively.... to prepare by or subject to a special treatment or process.... of, made by, used in, or using photomechanical or photoengraving methods....

Webster's New World Dictionary of the American Language 1161 (College ed.1962) (emphasis in original). Moreover, in *Landis v. Zoning Board of Adjustment of Hatfield Township,* 414 Pa. 146, 151, 198 A.2d 574, 576–77 (1964), our Supreme Court expressed its understanding of the term "processing" as follows:

> What is 'processing but treatment'? The latest edition of Webster's Third International Dictionary (1961) defines 'treatment' as: 'subjection of something to the action of an agent or *process.*' It states that 'to treat' means to 'subject to some *process* to improve the appearance, taste, usefulness, or some other quality.' It defines *'process'* as 'to put through a special process as (2) to make usable by special *treatment.*' In its adjectival sense, *'process'* is defined as 'prepared, handled, *treated* or produced by a special process.'

. . . .

> Finally, on this subject, the Supreme Court of the United States, in interpreting a certain provision of the Clayton Act, said that *'processing'* meant 'a mode of *treatment* of materials to be transformed or reduced to a different state or thing.' (*Corn Products Refining Company v. Federal Trade Comm.,* 324 U.S. 726, 65 S.Ct. 961, 89 L.Ed. 1320). (Emphasis, the Court's.)

1962). Thesing himself describes this work as repair work throughout his brief.

Our Supreme Court also discussed the term "processing" in *Gulf Oil Corp. v. City of Philadelphia*, 357 Pa. 101, 111–12, 53 A.2d 250, 255 (1947) (emphasis added), and stated:

Processing is a flexible term and it may refer to either chemical or physical changes *in* the thing acted upon.

. . . .

Processing may take place through either chemical or mechanical action, or through a combination of both. When wet clothes are placed on the line to dry they are being processed into dryness by air and sun. When apple juice is placed in a barrel it ferments into hard cider by chemical action. When wood pulp is converted into paper, the process is partly chemical and partly mechanical.

■ "To upholster," by contrast, is "to fit ... furniture with coverings, springs, cushions [and] padding." Webster's New World Dictionary of the American Language 1600 (College ed.1962). "Upholstering," in our opinion, does not involve "processing", as that term is commonly understood. Likewise, reupholstery work, as we previously noted, *see* n. 5, falls within the definition of "repair," which term, as commonly understood, is not synonymous with the terms "process" or "processing."

To say that "upholstering" or "reupholstering" are "processing" would be to attach a strained meaning to the term "processing." Here, we find this particularly true because the ordinance provision concerning small-type processing establishments suggests what is meant by a processing establishment by specifically excluding a use otherwise clearly falling within this classification, which excluded use is fundamentally and functionally different from Thesing's requested use.[6]

6. *See* n. 3, second paragraph; *Gulf Oil Corp.* We note further that Thesing appears to concede that his requested use does not involve "processing," when, in his brief at p. 15, he states: "Webster's Dictionary defines ... 'processing' as a series of actions changing or creating food or material from one stage to another. None of this applies [here]."

For the foregoing reasons, we will affirm the order of the common pleas court, having found neither error nor abuse of discretion by the board.

## ORDER

AND NOW, this 6th day of June, 1991, the order of the Court of Common Pleas of York County, at No. 86–SU–04633–08, dated June 26, 1990, is hereby affirmed.